UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KOTI HARBOLD, | ) | CASE NO. 5:22-cv-1583 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION & |
| | ) | ORDER |
| SMASH RESTRO & BAR, LLC, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Presently before the Court is plaintiff's motion for the entry of default judgment against defendants and an award of damages, attorney's fees, and costs, pursuant to the Fair Labor Standards Act ("FLSA") and state law. (Doc. No. 11.) The motion is unopposed. For the reasons that follow, default judgment is granted in favor of plaintiff and against defendants on plaintiff's federal and state wage and hour claims, and plaintiff is awarded damages, attorney's fees, and costs as set forth below.

**I. BACKGROUND**

Defendant Smash Restro & Bar LLC ("SR&B") is a limited liability company registered in the State of Ohio and doing business in Dover, Ohio. Defendant Jorge Vazquez ("Vazquez") is an Ohio resident, living in Bolivar, Ohio. (Doc. No. 1 (Complaint) ¶¶ 8–9.) At all times relevant to the complaint, SR&B and Vazquez jointly operated a restaurant in Dover, Ohio. (*Id*. ¶ 14.) Further, SR&B was an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r), the Ohio Constitution, and the Ohio wage and hour laws. (*Id*. ¶ 12.)

On or about April 1, 2021, defendants jointly hired plaintiff Koti Harbold ("plaintiff" or "Harbold") to work as a manager at their restaurant. (*Id.* ¶ 15.) Her managerial duties included supervising other employees, interviewing applicants, running errands off the restaurant's premises, tracking liquor sales and placing new orders for liquor, responding to customer complaints, and addressing employee concerns. (Doc. No. 1 ¶ 19; Doc. No. 11-1 (Declaration of Koti Harbold) ¶ 7.) Plaintiff was "frequently" tasked with these managerial duties, which amounted to at least 20% of her workweek. (Doc. No. 1 ¶ 17; Doc. No. 11-1 ¶ 6.) While plaintiff was also asked at times to perform the duties of a server and bartender, her "primary job duties were predominately that of a non-customarily and non-regularly tipped employee." (Doc. No. 1 ¶ 16; Doc. No. 11-1 ¶ 5.)

Despite a "significant portion" of plaintiff's workweek devoted to responsibilities associated with employees who do not regularly receive tips, defendants "jointly applied a tip-credit to [Harbold's] wages for the entirety" of Harbold's employment. (Doc. No. 1 ¶ 21; Doc. No. 11-1 ¶ 3.) As a result of this treatment, plaintiff's hourly rate while jointly employed by defendants was $4.40, well "below the federal and state minimum wage." (Doc. No. 1 ¶ 26; Doc. No. 11-1 ¶ 3.) Moreover, despite the fact that plaintiff often worked fifty (50) or more hours in a week, she was not compensated for this addition time at 150% of her regular hourly rate. (Doc. No. 1 ¶¶ 24–25; Doc. No. 11-1 ¶¶ 4–5.) Plaintiff complained to defendants about these pay practices "to no avail." (Doc. No. 1 ¶ 27.)

On September 7, 2022, plaintiff filed the present action in federal court, raising claims under the FLSA, Section 34A of the Ohio Constitution, Ohio Minimum Fair Wage Standards Act ("OMFWSA"), and Ohio Rev. Code § 4111, for failure to pay overtime and minimum wages.

Plaintiff also presented a claim under the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.51, for failure to page wages in a timely fashion; as well as a claim for civil penalties for criminal acts, under Ohio Rev. Code § 2307.60. (*See generally* Doc. No. 1.) In her prayer for relief, plaintiff sought compensatory, liquidated, punitive, and treble damages; interest; and attorney's fees and costs. (*Id*. at 14[1]–15.)

On September 14, 2022, plaintiff perfected service on SR&B. (Doc. No 4 (Return of Service).) She perfected service on Vazquez on September 23, 2022. (Doc. No. 5 (Return of Service).) On October 5, 2022, defendants, through counsel, moved unopposed for an extension of time until October 26, 2022 to answer or otherwise respond to the complaint. (Doc. No. 6 (Motion for Extension).) Also on October 5, 2022, defendants' counsel moved to withdraw his representation. (Doc. No. 7 (Motion to Withdraw).) The Court granted both motions. (Order [non-document], 10/12/2022.) Despite the grant of additional time, neither defendant filed an answer or otherwise responded to the complaint.

Plaintiff applied to the Clerk for an entry of default (*see* Doc. No. 8 (Application for Default)) and, on November 28, 2022, the Clerk entered default against defendants. (Doc. No. 10 (Entry of Default).) Plaintiff's motion for default judgment followed, seeking damages, attorney's fees, interest, and costs. (Doc. No. 11.) The motion is supported by the declaration of plaintiff (Doc. No. 11-1); a spread sheet, arranged by workweek, listing actual pay and hours worked, and calculating unpaid hourly and overtime pay (Doc. No. 11-2); the declaration of Attorney Robert

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

E. DeRose II, and attachments, including billing sheets (Doc. No. 11-3); and a proposed order (Doc. No. 11-4).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs default and default judgment. Default has been entered by the Clerk against defendants pursuant to Rule 55(a). (*See* Doc. No. 10.) Once default is entered, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citation omitted); *see also Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (noting that default "conclusively establishes every factual predicate of a claim for relief[]"); Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

Under Rule 55(b)(2), the Court may enter default judgment without a hearing, but may conduct a hearing if the Court needs to: (1) conduct an accounting; (2) determine the amount of damages; (3) establish the truth of any allegations by evidence; or (4) investigate any other matter. In this case, the Court has examined the record before it and plaintiff's submissions in support of her motion for default judgment and concludes that a hearing is not necessary to rule upon the motion.

The decision to grant default judgment is within the Court's discretion. *See AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citing, among authority, 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2685 (3d ed. 1998) ("This element of discretion makes it clear that the party making the request is not entitled to a default judgment as

of right, even when defendant is technically in default and that fact has been noted under Rule 55(a).")). Thus, defendants' default does not automatically entitle plaintiff to relief.

In order to rule upon plaintiff's motion, the Court must determine whether the factual allegations in the complaint deemed admitted by defendants' default, and reasonable inferences derived therefrom, are sufficient to satisfy the elements of plaintiffs' legal claims for which they seek default judgment. *See Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016) (finding even though defendant has defaulted, the court must determine whether factual allegations accepted as true state a claim for relief with respect to the claims for which plaintiffs seek default (citation omitted)); *see also Kwik–Sew Pattern Co. v. Gendron*, No. 1:08-cv-309, 2008 WL 4960159, at *1 (W.D. Mich. Nov. 19, 2008) ("[A] court may not enter default judgment upon a legally insufficient claim." (citations omitted)). Legal conclusions in the complaint are not deemed admitted by a defendant's default. *New London Tobacco Market, Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 410 (6th Cir. 2022) (citing 10A Charles A. Wright, et al., *Federal Practice and Procedure* § 2688.1 (4th ed. 2022)).

In addition, "[a]n entry of default judgment requires some affirmation that the person against whom the default judgment is obtained is not (1) 'an infant or incompetent person' who is unrepresented; (2) a member of the armed services who is entitled to protection against default pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. Appendix § 401 *et seq.*; or (3) an officer or agency of the United States." *Leach v. Lifeway for Youth, Inc.*, No. 1:07-cv-200, 2008 WL 1990390, at *1 (S.D. Ohio May 1, 2008) (citing Fed. R. Civ. P. 55(b), (c), (e); Advisory Committee Notes to Fed. R. Civ. P. 55, Supplementary Note.). As a for-profit corporation, SR&B is not a minor, incompetent person, or subject to the Soldiers' and Sailors'

5

Relief Act of 1940. *See Zinganything, LLC,* 2016 WL 362359, at *2 (citing *Hitachi Med. Sys. Am., Inc. v. Lubbock Open MRI, Inc.*, No. 5:09-cv-847, 2010 WL 4638057, at *1 (N.D. Ohio Nov. 5, 2010) ("As corporations, the Defaulting Defendants are clearly not infants or incompetent persons.")). (*See* Doc. No. 1 ¶ 8.) Additionally, there is nothing in the record to support a finding that Vazquez is incompetent, subject to the Soldiers' and Sailors' Relief Act of 1940, or otherwise incapable of being sued in federal court.

### III. DISCUSSION

#### A. Liability

Plaintiff seeks to recover damages on her FLSA and OMFWSA claims for unpaid overtime and unpaid minimum wages. She also seeks to recover under the OPPA for failure to pay wages in a timely fashion. The Court finds that defendants were covered employers under the FLSA. SR&B was an enterprise within the meaning of 29 U.S.C. § 203(r), in that it had employees engaged in commerce (*see* Doc. No. 1 ¶ 12). *See Kowalski v. Kowalski Heat Treating, Co*., 920 F. Supp. 799, 802–03 (N.D. Ohio 1996). Additionally, the Court finds that Vazquez is jointly and severally liable with SR&B under the FLSA. (Doc. No. 1 ¶¶ 10–11.) According to the complaint, defendants jointly hired plaintiff and had the ability to discharge her (*id.* ¶¶ 15, 28), they each exercised supervisory control over plaintiff (*id.* ¶¶ 20, 29, 30), and they both participated in determining plaintiff's rate of pay and method of payment (*id.* ¶¶ 21–22, 29, 31). 29 C.F.R. § 71.3(a)(1); *see* 29 U.S.C. § 203(d).

The FLSA generally requires an employer to pay an employee an established hourly minimum wage for up to 40 hours per week and overtime compensation of one and one-half times the employee's regular rate of pay for hours worked over 40 in a work week. 29 U.S.C. §§ 206(a),

207(a)(1). An employer who violates the minimum wage and overtime compensation provisions of the FLSA is liable to the employee for the unpaid wages, plus liquidated damages equal to the amount of those unpaid wages. 29 U.S.C. § 216(b).

As set forth above, plaintiff has alleged defendants failed to pay her an established hourly minimum wage for up to 40 hours per week for each week she worked for defendants. Plaintiff has also adequately alleged that she was not paid overtime compensation at one and one-half times her regular rate of pay for hours worked over 40 in a work week, and that the hours she worked in certain weeks exceeded 40 hours.[2] She has, therefore, established defendants' liability for violations of the FLSA.

Because the OMFWSA relies on definitions applicable to the FLSA, and contains the same wage and hour requirements regarding the payment of non-exempt employees, FLSA and OMFWSA claims are analyzed "in unitary fashion." *Douglas v. Argo-Tech. Corp.*, 113 F.3d 67, 69 n.2 (6th Cir. 1997); *see Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 732 (S.D. Ohio 2006) ("Courts have uniformly held that Ohio's wage and hour law should be interpreted in accordance with the FLSA." (citation omitted)). Accordingly, the Court finds that plaintiff's complaint allegations are also sufficient to establish liability under the OMFSWA.

"The [OPPA], among other requirements, requires employers in Ohio to pay their employees the preceding month's wages by the first day and fifteenth day of the month." *Stang v. Paycor, Inc.*, 582 F. Supp. 3d 563, 567 (S.D. Ohio 2022) (citing Ohio Rev. Code § 4113.15(A)). The OPPA also provides in relevant part that, "[w]here wages remain unpaid for thirty days beyond

---

[2] Moreover, plaintiff has alleged sufficient facts to establish that she was non-exempt from the overtime requirements of the FLSA. (Doc. No. 1 ¶ 39). *See* 29 C.F.R. § 541.100(a)(1) and 29 C.F.R. § 541.602.

the regularly scheduled payday . . . the employer, in addition, as liquidated damages, is liable to the employee in an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater." Ohio Rev. Code § 4113.15(B). As was the case with the OMFSWA, "[c]ourts interpret overtime claims brought under the [OPPA] in tandem with the FLSA and in a unitary fashion." *Stang*, 582 F. Supp. 3d at 567 (citations omitted). Here, plaintiff alleges that defendants violated the OPPA, in that she was not paid all wages due within thirty (30) days of her performing the work that entitled her to the wages. (Doc. No. 1 ¶¶ 93–94.) She has, therefore, also established liability under the OPPA.

### B. Damages

While a plaintiff's well-pleaded allegations in the complaint as to liability are taken as true when a defendant is in default, the same is not true for damages. *Ford Motor Co.*, 441 F. Supp. 2d at 848 (citing *Thomson v. Wooster*, 114 U.S. 104, 5 S. Ct. 788, 29 L. Ed. 105 (1885)); *Nat'l Satellite Sports, Inc. v. Mosley Entm't, Inc*., No. 01-cv-74510, 2002 WL 1303039, at *3 (E.D. Mich. May 21, 2022) (the allegations of the complaint regarding the amount of damages are not controlling (citations omitted)). "[T]he civil rules 'require that the party moving for a default judgment must present some evidence of its damages.'" *IBEW Local Union 82 v. Union Lighting Prot*., No. 3:11-cv-208, 2012 WL 554573, at *1 (S.D. Ohio Feb. 21, 2012) (quoting *Mill's Pride, L.P. v. W.D. Miller Enter*., No. 2:07-cv-990, 2010 WL 987167, at *1 (S.D. Ohio Mar. 12, 2010)).

Plaintiff complains that defendants "did not employ a method to capture an *accurate reflection of the amount of time* [Harbold] worked per workweek." (Doc. No. 11, at 7 (emphasis in original).) Nevertheless, to award monetary damages in this case, the Court need only find that plaintiff has provided sufficient evidence to allow the finder of fact to make just and reasonable

inferences as to the time she worked. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946) ("[W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference.")

Here, plaintiff has come forward with sworn testimony estimating the hours she worked, including the hours in excess of forty she typically worked. (*See* Doc. No. 11-1 ¶¶ 2, 10.) Her counsel has also prepared a chart showing the hours actually worked, along with the calculations of unpaid minimum wage and overtime. (*See* Doc. No. 11-2.) The Court finds this evidence is sufficient to establish the number of hours plaintiff worked for defendants without legally adequate compensation in violation of the minimum wage requirements, as well as her entitlement to overtime compensation, under the FLSA and Ohio law. *See, e.g., Moran v. Al Basit LLC*, 788 F.3d 201, 205–06 (6th Cir. 2015) (permitting plaintiff-employee to establish his FLSA damages by demonstrating the hours he typically worked during the course of his employment for defendant-employer).

Plaintiff also seeks liquidated damages. "A district court . . . has the discretion not to award liquidated damages to a prevailing plaintiff if 'the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938.'" *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002) (quoting 29 U.S.C. § 260) (further citation omitted)). The burden is on the employer to demonstrate good

faith, and "[i]n the absence of such proof . . . a district court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages." *Id*. (quotation marks and citation omitted). The Court finds that plaintiff is entitled to liquidated damages equal to the amount of unpaid wages and overtime she is owed under the FLSA because there is no evidence to suggest defendants acted in good faith. *See* 29 U.S.C. §§ 216(b), 260. Additionally, plaintiff is entitled to treble damages under the OMFWSA. *See* Ohio Rev. Code § 4111.14(j) (providing that an employer that fails to pay minimum wages is liable for liquidated damages in the amount of 200% unpaid compensation under the OMFWSA (citing Article II, Section 34A of the Ohio Constitution).)[3]

Based upon her submitted documentation, the Court finds that plaintiff's minimum wage damages are $7,680.20; when trebled pursuant to the OMFWSA and the Ohio Constitution, her minimum wage damages become $23,040.60. (*See* Doc. No. 11-2, at 2.) Likewise, the Court finds that plaintiff's documentation is sufficient to sustain an award of $1,488.30 for unpaid overtime wages, with an equal award of $1,488.30 for liquidated damages under the FLSA. (*Id*.) Additionally, plaintiff is entitled to an award of $200.00 for defendants' violations under the

---

[3] Plaintiff has also raised a claim for punitive damages under Ohio Rev. Code § 2307.60. (Doc. No. 1 ¶¶ 86–89 (Count V).) Under § 2307.60, "a civil action for damages caused by criminal acts is available unless otherwise prohibited by law." *Jacobson v. Kaforey*, 39 N.E.3d 799, 805 (Ohio Ct. App. 2015) (citations omitted). The FLSA provides for criminal penalties for anyone who "willfully" violates the Act. 29 U.S.C. § 216(a). Plaintiff relies exclusively on the same allegation of willfulness (*see* Doc. No. 1 ¶ 87) in support of this claim. While this allegation alone (accepted as true and without evidence of good faith) may be sufficient to establish the right to liquidated damages under the FLSA, it is insufficient to establish an award for punitive damages for which there must be at least some evidence offered by plaintiff. *See also Hutchings v. Hutchings*, 150 N.E.3d 548, 553 (Ohio 2019) (noting that an award of punitive damages requires proof by plaintiff of entitlement to damages by clear and convincing evidence (citation omitted)); *Ford Motor Co.*, 441 F. Supp. 2d at 848 (holding that while a plaintiff's well-pleaded allegations as to liability are taken as true when a defendant is in default, the same is not true for damages (citation omitted)). Moreover, the Court underscores the fact that § 2307.60 is remedial in nature. *See Harris v. Cunix*, 187 N.E.3d 582, 591 (Ohio Ct. App. 2022). Because plaintiff is already recovering compensatory, liquidated, and treble damages, as well as attorney's fees, the Court will exercise its discretion and not award punitive damages, as such an award would be excessive.

OPPA. *See* Ohio Rev. Code § 4113.15(B).

### C. Attorney's Fees

The FLSA also allows a plaintiff to recover reasonable attorney's fees and costs. 29 U.S.C. § 216(b). To determine reasonable attorney's fees, a district court "begins by determining 'the fee applicant's lodestar, which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) (quoting *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)).[4] To prove that the purported fees are reasonable, the requesting party must provide enough evidence "supporting the hours worked and rates claimed." *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1207 (6th Cir. 1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).

In support of her request for attorney's fees and costs, plaintiff provides the declaration of her attorney, Robert E. DeRose. (Doc. No. 11-3.) The declaration details the courts in which counsel is admitted to practice, his experience serving as lead counsel in similar FLSA cases, prior decisions awarding counsel attorney's fees and the hourly rates approved by those courts, a description of the legal services provided in this case, and a breakdown of the number of hours each member of Mr. DeRose's law firm—Barkan Meizlish, LLP—devoted to the case and their hourly rates. Further, appended to the declaration in support of fees and costs are the following: Mr. DeRose's biography (Attachment 1); the law firm's resume (Attachment 2); and the firm's

---

[4] The fee may then be adjusted by considering: (1) time and labor; (2) novelty and difficulty of the case; (3) skill necessary; (4) the extent the attorney is precluded from working on other matters; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations; (8) the amount involved and the results obtained; (9) the attorney's experience, reputation, and ability; (10) the undesirability of the case; (11) the nature and length of the attorney-client relationship; and (12) awards in similar cases. *Hensley v. Eckerhart*, 461 U.S. 424, 430, n.3, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (citation omitted)).

lodestar report for this case, including billing sheets (Attachment 3).

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (citation omitted). A district court may consider "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Waldo*, 726 F.3d at 821–22 (quotation marks omitted).

According to DeRose's declaration, plaintiff seeks hourly rates that span from $650.00 for Attorney DeRose to $115.00 for law clerks. (Doc. No. 11-3 ¶ 6, Attachment 3.) While Attorney DeRose's hourly rate is higher than this Court typically approves, the Court finds the average rate billed of $245.92 is in line with the hourly rates awarded in other FLSA cases litigated by Attorney DeRose and other attorneys with his same expertise in wage and hour law.[5] *See, e.g., Barnes v. Abraham, Inc.*, No. 2:17-cv-279, 2017 WL 5714091, at *5 (S.D. Ohio Nov. 28, 2017) (approving $450.00 hourly rate for a partner at Barkan Meizlish, LLP (citing *Heard v. Nielson*, No. 1:16-cv-1002, 2017 WL 2426683, at *6 (S.D. Ohio June 2, 2017))). The Court, therefore, finds that plaintiff is requesting reasonable hourly rates for counsel and staff.

As for the number of hours expended in this litigation, DeRose avers that he and other members of his firm spent 26.20 hours on this matter. (Doc. No. 11-3 ¶ 6, Attachment 3.) The billing sheets documenting these hours demonstrate that those services were the kind that competent counsel would be expected to perform in litigating this type of case. (*See id.*) Moreover,

---

[5] The Court finds that the rate is especially reasonable, given that the firm appears to have—where possible—assigned work to paralegals and law clerks, who bill at a significantly lower hourly rate. (*See* Doc. No. 11-3 ¶ 6, Attachment 3.)

the Court finds the number of hours expended on each task to be reasonable in light of the nature of the litigation and the posture of the case at judgment. Further, DeRose estimates that an additional $2,250.00 of attorney's fees will be generated bringing this action to a close and collecting the judgment on behalf of the client. (Doc. No. 11, at 11; *see* Doc. No. 11-3 ¶ 9.)

Multiplying the reasonable hourly rates of counsel and staff by the number of hours (26.20), the Court arrives at an award of attorney's fees of $6,443.00. Plaintiff also seeks costs totaling $450.84, consisting of the filing and administration costs. (Doc. No. 11-3 ¶ 7, Attachment 3, at 15.) The Court finds these costs to be reasonable and supported by the record. Accordingly, the Court awards attorney's fees and costs in the amount of $6893.84.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for default judgment against defendants is GRANTED. Plaintiff is AWARDED $33,111.04 as follows: $1,488.30 for unpaid overtime wages under the FLSA; $1,488.30, as liquidated damages under the FLSA; treble damages in the amount of $23,040.60 under the OWA for minimum wage violations (which includes $7,680.20 of unpaid minimum wages); $200.00 for violations of the OPPA; and $6,893.84 in attorney's fees and costs, plus interest from the date of the judgment. This case is closed.

**IT IS SO ORDERED**.

Dated: June 20, 2023

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**